UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RANDY LANCE BRAUN,

        Petitioner,               Case No. 1:17-cv-1129

v.                                   Honorable Janet T. Neff

CARMEN PALMER,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Randy Lance Braun is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Michigan. Following a jury trial in the Chippewa County Circuit Court, Petitioner was convicted of nine counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b. On February 1, 2013, the court sentenced Petitioner to concurrent prison terms of 25 to 75 years on each count.

On December 21, 2017, Petitioner filed his habeas corpus petition raising three grounds for relief, as follows:

    I.      Petitioner's Sixth Amendment right to an impartial jury was violated by the seating of two jurors who failed to affirm they could render a fair verdict or to be impartial. Counsel (trial counsel) was ineffective for failing to strike said jurors.

    II.     Petitioner's Sixth Amendment right to effective counsel was violated when appellate counsel failed to raise the seating of two jurors who did not indicate they could be impartial; and trial counsel's ineffectiveness for failing to strike or object to the seating of said two jurors.

    III.    Petitioner's Sixth Amendment right to effective assistance of counsel was violated when appellate counsel failed to raise trial counsel's

> ineffectiveness for allowing structural error to occur by the seating of jurors who did not affirm they could be impartial during voir dire which violated Petitioner's right to a fair and impartial jury.

(Pet., ECF No. 1-1, PageID.19-21.) Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are procedurally defaulted and/or meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that ground I is meritless and that finding mandates the conclusion that grounds II and III are meritless as well. Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual Allegations

Petitioner was convicted of sexually assaulting his three stepdaughters. The stepdaughters were adults at the time of trial. Petitioner molested them when they were prepubescent. A detailed recitation of the evidence introduced at trial is not necessary to address the issues Petitioner has raised.

Petitioner claims his appellate counsel rendered constitutionally ineffective assistance by failing to raise on appeal the issues of biased jurors and trial counsel's failure to challenge biased jurors. Petitioner claims that his trial counsel rendered ineffective assistance by failing to challenge biased jurors. Finally, Petitioner claims that his convictions violate due process because the jury included biased jurors.

Petitioner claims the transcript of the *voir dire* reveals the jurors' bias. The *voir dire* took a little over one hour during the first morning of trial. The court and both counsel were active during the process. Over thirty prospective jurors were excused for cause or on peremptory challenge before both sides were satisfied with the jury. Immediately after the *voir dire*, the court administered the oath. The jurors swore to "render a true verdict, and that [they would] render

2

[their] verdict only on the evidence introduced and in accordance with the instructions of the court . . . ." (Trial Tr. I, ECF No. 9-8, PageID.484.)

Petitioner contends that two of the jurors were biased: Juror Sare and Juror Henderson. Juror Sare never spoke during the voir dire. Juror Henderson, however, responded to the court's questioning as follows:

| | |
|---|---|
| THE COURT: | Does anyone have a family member who serves in law enforcement? |
| | *   *   * |
| JUROR HENDERSON: | My son is a State Trooper. My brother is a State Police officer. |
| THE COURT: | Would that influence your decision? You seem to be nodding. |
| JUROR HENDERSON: | I am not quite sure, I guess. |
| THE COURT: | Do you talk to them about their work? |
| JUROR HENDERSON: | I talk to my son every day. |
| THE COURT: | About the work? About what he does? |
| JUROR HENDERSON: | I ask how his day was and stuff. |
| THE COURT: | Okay. Does the question about his day deal with the day-to-day situations he deals with? Do you discuss those? |
| JUROR HENDERSON: | Not really discuss. He tells me he wrote 17 tickets today, but he doesn't really say. |
| THE COURT: | Would that, again I ask this question at the risk of repeating it: Would the fact that he is so involved as an employee of the state, would that affect your ability to be fair and impartial? |
| JUROR HENDERSON: | I don't think so. |
| THE COURT: | You could listen to the facts, listen to the facts and base your decision on the case on the facts brought out in court? |

| | |
|---|---|
| JUROR HENDERSON: | Yes, sir. |
| THE COURT: | Do you have any reservations about returning a verdict of not guilty as far as your son's reaction to that verdict? |
| JUROR HENDERSON: | I guess not. |
| THE COURT: | What I am getting at is I don't want you to be intimidated and think, oh, my son would be, you know, upset because I [w]as on the jury and we found the defendant not guilty. I want to make sure that you don't feel that way. Would you be intimidated by that? |
| JUROR HENDERSON: | I don't know. |
| THE COURT: | You don't? Okay. Anyone else? |

(Trial Tr. I, ECF No. 9-8, PageID.448-450.)

At most, Juror Henderson's comments demonstrate that he did not think his son's role with the state would affect Henderson's ability to be fair and impartial; that he guessed that he would not have any reservation about returning a not-guilty verdict based on his son's reaction to such a verdict; and he did not know whether he would be intimidated if, in fact, his son were upset by a not-guilty verdict. Despite Henderson's uncertainty about his son's reaction and uncertainty about Henderson's reaction to his son's reaction, Henderson was certain that he could listen to the facts and base his decision on the evidence. Henderson then swore an oath to do just that. (*Id.*, PageID.484.)

The jury heard testimony for three days. The prosecutor put on twelve witnesses; the defense elicited testimony from six more witnesses. On the fourth day of trial, the attorneys made their closing arguments, the court instructed the jury, and then the jury deliberated for less than two hours before finding Petitioner guilty on all nine counts.

4

Petitioner, with the assistance of appointed counsel, appealed his convictions and sentences to the Michigan Court of Appeals. Petitioner raised challenges to the trial court's rulings admitting evidence that Petitioner thought should have been excluded and to the trial court's rulings excluding evidence that Petitioner thought should have been admitted. Petitioner also argued that Offense Variable 12 was improperly scored. Finally, Petitioner claimed his counsel was ineffective for failing to raise the evidentiary issues brought up on appeal. Petitioner did not raise any of his habeas grounds in his initial appeal.

By unpublished opinion issued October 21, 2014, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. (Mich. Ct. App. Op., ECF No. 9-15, PageID.1071-1078.) Petitioner sought reconsideration. His motion was denied. (Mich. Ct. App. Order, ECF No. 9-15, PageID.1228.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the same issues. The supreme court denied leave to appeal by order entered June 3, 2015. (Mich. Order, ECF No. 9-17, PageID.1291.) Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, Page.ID.3.)

On May 26, 2016, Petitioner filed a motion for relief from judgment in the Chippewa County Circuit Court (ECF No. 9-13) raising the same issues he raises in his petition. By order entered July 29, 2016, the trial court denied Petitioner's motion:

> Defendant's Motion for Relief of Judgment is Denied. There is no merit to the Defendant's claims. He has had two appeals, one to the Court of Appeals, the second to the Michigan Supreme Court. He admits the issues he now raises were not included in these appeals. Defendant does not give sufficient reasons for the failure to raise them.

(Chippewa Cty. Cir. Ct. Order, ECF No. 9-14, PageID.1069.) Petitioner sought leave to appeal the trial court's decision in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered December 21, 2016, and October 3, 2017,

respectively.  (Mich. Ct. App. Order, ECF No. 9-16, PageID.1230; Mich. Order, ECF No. 9-18, PageID.1393.)  This petition followed.

## II. AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state

court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 568 U.S. at 298. Where other circumstances indicate that the state court has not addressed the merits of a claim, the Court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

### III. Biased Jurors

Petitioner's claims are somewhat like a matryoshka—a Russian nesting doll. On the outside is Petitioner's claim that his appellate counsel rendered ineffective assistance. When you open up that claim, however, you discover that appellate counsel was ineffective because he failed to raise the issue that trial counsel rendered ineffective assistance. When you open up that claim, you find the core of Petitioner's complaint: his trial counsel rendered ineffective assistance because she failed to challenge two biased jurors.

When Petitioner raised these issues for the first time in his motion for relief from judgment, the trial court refused to consider them because Petitioner failed to raise them on direct appeal and failed to provide a good reason for failing to do so. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial,

8

appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

In Petitioner's case, consideration of the procedural default issue requires examination of the nested ineffective assistance of counsel claims. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Where the effectiveness of counsel's assistance is challenged because counsel chose to forego a particular issue, the ineffective assistance claim necessarily fails if the underlying issue or argument had no merit. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Thus, if Petitioner's "biased jurors" claim has no merit, all of his claims fail.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury . . . and to have the assistance of counsel for his defense." U.S. Const. amend. VI. The right to an impartial jury is applicable to the states via the Fourteenth Amendment. *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted).

"The *voir dire* is designed "'to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)). *Voir dire* plays an important role in ensuring the impartiality of the jury selected:

> It is true that "[v]oir dire 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'" *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Dennis v. United States*, 339 U.S. 162, 171-172 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950). "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451

U.S. 182, 188 (1981) (plurality opinion). Hence, "[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931).

*Morgan v. Illinois*, 504 U.S. 719, 729-730 (1992) (parallel citations and footnote omitted).

It is well-established that jurors are presumed to be impartial. *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723). When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality be believed.'" *Dennis*, 354 F.3d at 520 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)); *see also Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004). The trial court must determine whether the juror demonstrates "actual bias," that is, "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Miller*, 385 F.3d at 673 (internal quotations omitted). "A juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias. The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) (citing *Patton*, 467 U.S. at 1032). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. In evaluating the juror's ability to lay aside partiality, the Sixth Circuit has identified a number of important factors, including the following: "'the juror's own estimation of the relevance of [the information giving rise to her partiality]; any express indications of partiality by [the] juror . . . and the steps taken by the trial court in neutralizing this information.'" *Hughes*, 258 F.3d at 459 (quoting *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)).

11

The question of bias of an individual juror at a state criminal trial is one of fact. *Dennis,* 354 F.3d at 520 (citing *Patton,* 467 U.S. at 1036); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)).  Petitioner bears the burden to establish the existence of juror bias which caused him to suffer actual prejudice. *See Smith*, 455 U.S. at 215-17 (petitioner bears the burden to demonstrate that he suffered "actual bias" as a result of juror misconduct); *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000); *Sheppard v. Bagley*, 657 F.3d 338, 348-49 (6th Cir. 2011) (Batchelder, J. concurring).

Petitioner has not met his burden here.  With regard to Juror Sare, Petitioner offers nothing to suggest that the juror was biased.  He claims that Juror Sare was never subjected to questioning on *voir dire*, but that is plainly false.  Juror Sare was one of the first jurors called to the jury box.  (Trial Tr. I, ECF No. 9-8, PageID.443.)  He would have heard all of the queries from the court that were intended to ferret out bias.[1]  The absence of any response from Sare on the record supports the inference that none of the circumstances that suggest bias applied to Juror Sare.

---

[1] Those questions included:

    Have you ever served on a jury before?

    Are you acquainted with the defendant or any of his family, relatives?

    Do any of you know anything about this case whatsoever?

    Do any of you have a business matter, any cases or matters pending with the prosecutor's office?

    Do any of you have any matters pending with [defense counsel]?

    Have any of you ever been accused of a similar crime?

    Have any of you ever had an experience similar to the charges that I have read in the complaint?

    Have any of you been a witness before in a case?

    Do you have a valid Michigan driver's license?

    Does anyone have a family member who serves in law enforcement?

Certainly, the absence of a response from Juror Sare cannot support the inference that he was actually biased.

With respect to Juror Henderson, the *voir dire* transcript suggests that Henderson was uncertain as to how his family's reaction to the verdict might affect him. But, Henderson was certain that he could and would decide the case based on the evidence introduced and the court's instructions. As the Sixth Circuit explained in *Hughes*, a juror's doubt about his or her own partiality does not constitute a showing of actual bias. Thus, Petitioner's showing here is not sufficient.

Because Petitioner has failed to show juror bias, his juror bias claim is meritless. Therefore, trial counsel's failure to raise juror bias was neither professionally unreasonable nor prejudicial. Additionally, appellate counsel's failure to raise either juror bias or trial counsel's

---

[D]o you bring to this case any prejudice or preconceptions about this case or about our legal system?

Can you think of any reason why you would have difficulty being fair and impartial for both the prosecution and the defendant?

Would you be able to follow the instructions as I gave them?

(Trial Tr. I, ECF No. 9-8, PageID.444-484.) The court also asked follow-up questions, such as:

Do you feel that experience, situation, would affect your ability to be a fair and impartial juror on this jury?

Would that have any bearing on your ability in this case to be fair and impartial?

Would your experience, do you feel, cause you to have difficulty being fair and impartial?

You could be fair and impartial?

Do you think you could sit on the panel and be fair and impartial to both sides?

(*Id.*)

ineffectiveness with regard to the juror bias issue was neither professionally unreasonable nor prejudicial. Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.


Dated:  July 10, 2019                             /s/ Ellen S. Carmody
                                                  Ellen S. Carmody
                                                  United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).